# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:06cv185

| MERCAM, INC., | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| Vs. | ) | MEMORANDUM AND RECOMMENDATION |
| PORTLYN, INC., | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on defendant's Motion to Dismiss or in the Alternative to Transfer (#12). On September 8, 2006, defendant filed its Brief in Support of such motion (#12-2); on September 25, 2006, plaintiff filed its timely Memorandum in Opposition (#13); and on September 29, 2006, defendant filed a timely Reply (#14).

Having considered the respective arguments, the affidavits and exhibits, and the Complaint, the undersigned finds that this court has personal jurisdiction over the defendant and that venue is appropriate in the Western District of North Carolina. For the reasons discussed below, the undersigned will respectfully recommend to the district court that defendant's motion be denied.

## FINDINGS AND CONCLUSIONS

### I. Background

This diversity action concerns guarantees and warranties on the sale of goods between corporate residents of different states. Plaintiff is a North Carolina corporation with a principal place of business in Henderson County, North Carolina. Complaint, at ¶ 1. Plaintiff is a supply distributor of health and beauty care products to retailers. Plaintiff's brief, at 1. Defendant is a Florida corporation, with its principal place of business located

in Broward County, Florida. Complaint, at ¶ 2. Defendant is engaged in the business of selling wholesale heath and beauty supplies and over-the-counter medications to distributors such as plaintiff. Complaint, at ¶ 2; Plaintiff's Brief, at 1.

As the 10th of a series of 11 transactions between plaintiff and defendant, plaintiff alleges that on May 16, 2005, it purchased 33,840 pieces of BAYER RAPID RELIEF CAPS for $104,981.83 from defendant. Complaint, at ¶ 5. After it had already sold half its inventory to retailers, plaintiff alleges that it discovered that the BAYER RAPID RELIEF CAPS it bought from defendant were stolen. Id., at ¶ 6. After such discovery, plaintiff contends that it contacted the Federal Bureau of Investigation's ("FBI") field office in Asheville, North Carolina, to report its possession of the stolen goods. Complaint, at ¶ 7. On November 17, 2005, the FBI seized plaintiff's remaining stock of BAYER RAPID RELIEF CAPS, Complaint, at ¶ 8, and plaintiff made efforts to recover from retailers any stolen product it had sold.

In bringing its seven claims against defendant, plaintiff has alleged that prior to purchasing the BAYER RAPID RELIEF CAPS from defendant, it received a "Continuing Guaranty and Indemnity Agreement" from defendant, in which defendant warranted that it had title to the products it sold. Plaintiff's Brief, Ex. B. (#13-2). Plaintiff alleges that in selling stolen goods and refusing to honor the Continuing Guaranty, defendant has committed the following torts:

(1) Breach of Contract;
(2) Breach of Implied Warranty of Title;
(3) Breach of Contract;
(4) Misrepresentation;
(5) Negligent Misrepresentation;

(6) Unjust Enrichment; and

(7) Unfair and Deceptive Trade Practices.

In bringing such claims, plaintiff has asserted the diversity jurisdiction of this court under 28, United States Code, Section 1332. Complaint, at ¶ 3. Plaintiff has also asserted that the Western District of North Carolina is the appropriate venue because, "a substantial portion of the events or omissions giving rise to Mercam's claims occurred in this District." Id., at ¶ 4.

Defendant has moved to dismiss under Rules 12(b)(2) and (3), Federal Rules of Civil Procedure, alleging lack of personal jurisdiction and improper venue.

## II. Applicable Standards

### A. Rule 12(b)(2)

Rule 12(b)(2) provides for dismissal where the court lacks personal jurisdiction over a particular named defendant. In the Fourth Circuit, the standard for deciding a motion based on Rule 12(b)(2) was set forth in Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989), where it explained that a plaintiff has the burden to prove personal jurisdiction by a preponderance of the evidence. When a factual dispute arises as to whether or not jurisdiction exists, the court may either conduct an evidentiary hearing or defer ruling on the matter until it receives evidence on the jurisdictional issue at trial. Id. When a court decides the issue on the record then before it, the court may consider "the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint," and the burden is plaintiff's "to make a mere *prima facie* showing of jurisdiction to survive the jurisdictional challenge." Clark v. Milam, 830 F.Supp. 316, 319 (S.D.W.Va.1993) (citations omitted). A court must resolve factual disputes in favor of the party asserting jurisdiction for the limited purpose of the *prima facie* showing. Bakker, at 676. Such resolution must

include construing all relevant pleadings in a light most favorable to the plaintiff, assume the credibility of any affiant, and drawing the most favorable inferences for the existence of jurisdiction. Id.

### B. Rule 12(b)(3)

In accordance with Rule 12(b)(3), a court may dismiss a complaint for improper venue or transfer venue to a court where it could have been brought. When considering a motion to dismiss for improper venue, a court must accept the facts alleged in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. Micromuse, Inc. v. Aprisma Management Technologies, Inc., 2005 WL 1241924, *2 (S.D.N.Y. 2005).[1]

Where as here the court's jurisdiction is founded solely on diversity of citizenship, Section 1391(a) provides that venue is only appropriate in

(1) a judicial district where any defendant resides, if all defendants reside in the same State,

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

(3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). The only provision of Section 1391(a) that is applicable to this case is Section 1391(a)(2), which will be discussed below.

## III. Discussion

### A. Introduction: Resolution of Disputed Facts

#### 1. Who Shipped What

Defendant first argues that it "did not ship the goods to Global Freight Services or

---

[1] Due to limits of electronic case filing, a copy of such unpublished opinion is incorporated into the electronic record through reference to the Westlaw citation.

-4-

to Mercam." Motion to Dismiss, at ¶ 5. Defendant goes on to argue in its brief that it "has made only a few shipments to plaintiff." Defendant's brief, at 2. Plaintiff does not state whether it or defendant was the shipper of the stolen goods. The undersigned deems defendants reference to "goods" to be to the goods underlying the claims asserted in this action. The undersigned has reviewed the Exhibits attached the affidavit of Peter Smith (plaintiff's president), and determined that plaintiff was the actual shipper of the stolen goods from Florida.

Eleven separate transactions occurred between these parties and 11 shipments were made. Of those 11 shipments, it appears that defendant was the shipper nine times and that plaintiff was the shipper twice. The two shipments for which plaintiff was apparently the shipper included the following: (1) the May 5, 2005, transaction (see Plaintiff's Ex. L, at 15 (#13-8));[2] and (2) the May 16, 2005, shipment of the allegedly stolen goods, which also included other goods. See Plaintiff's Ex. M, at 8 (#13-9).

   2.   **Solicitation**

There also appears to be an issue of fact as to whether the faxes defendant sent plaintiff were solicited or unsolicited by plaintiff. Plaintiff argues that defendant "sent an unsolicited fax *each week* to Mercam offering products for sale." Plaintiff's Brief, at 1. In its reply, defendant argues that it "did not send unsolicited ads to the Plaintiff . . . . The items that Plaintiff sent as advertisements are product listings sent at the request of a former Mercam employee, Gary Iley." Defendant has included a declaration of plaintiff's former employee that such faxes were not sent unsolicited by defendant, but were sent to plaintiff

---

[2] While neither party has affirmatively stated that plaintiff was the shipper as to the May 5, 2005, transaction, a reasonable inference arises that it was the shipper inasmuch as a representative of plaintiff faxed the freight bill to defendant on May 9, 2005. Id.

at his instruction." Declaration of Gary Iley, at ¶ 5 (#14-3).

Despite the weight that one would naturally assign to Mr. Iley's declaration under the best evidence rule, it would appear that the case law requires the court to resolve this factual dispute in plaintiff's favor for the limited purpose of deciding the motions to dismiss, as set forth above.

### B. Rule 12(b)(2): Personal Jurisdiction

Defendant contends that the action should be dismissed because plaintiff has not alleged that defendant has the requisite minimum contacts with the State of North Carolina that would justify the exercise of personal jurisdiction over them.

At the constitutional level, whether or not to exercise jurisdiction over a defendant is a question of fairness. International Shoe Co. v. Washington, 326 U.S. 310, 317-20 (1945). However, determining what is fair requires review of the quantity and quality of the defendant's contacts with the forum state. Perkins v. Benquet Mining Co., 342 U.S. 4376 (1952). There are five factors used in determining whether the long-arm statute and minimum contacts have been satisfied:

    (1)    quantity of the contacts;
    (2)    nature and quality of the contacts;
    (3)    source and connection of the cause of action to the contacts;
    (4)    interest of the forum state; and
    (5)    convenience.

Western Steer-Mom & Pops v. FMT Invs., Inc., supra, at 264; see Fieldcrest Mills, Inc. v. Mohasco Corp., supra, at 427; *see also* N.C. Gen. Stat. § 1-75.4(5) (North Carolina long-arm statute). The burden is on plaintiff to establish that the long-arm statute provides for jurisdiction over the defendant. Marion v. Long, 72 N.C. App. 585, cert. denied, 313 N.C. 604 (1985).

When a motion to dismiss based on personal jurisdiction is filed, a court has two

options: (1) consider "the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint," Clark v. Milam, supra; or (2) defer ruling on the matter until it receives evidence on the jurisdictional issue at trial. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989). In this case, the court has found the papers submitted to provide a sufficient basis for decision.

Plaintiff has submitted the documents underlying the 11 transactions as exhibits to the affidavit of its president Peter Smith. Taking all of the evidence in a light most favorable to plaintiff, defendant sold a total of 5,499 cases of sundry products to plaintiff between November 2004 and May 2005. Eleven shipments were made, and in nine instances defendant shipped goods to plaintiff at its place of business in North Carolina. Plaintiff paid defendant $476,981.56 for such goods, and payment was made through wire transfers between plaintiff's bank in North Carolina and defendant's bank in Florida. These exhibits also demonstrate that a number of calls and faxes were sent between these parties, including faxes from defendant to plaintiff concerning the various transactions.

As to the transaction which is the subject of this suit (the 10th transaction), it is undisputed that plaintiff's president inspected the goods and consummated that particular deal in person in Florida and was solely responsible for shipping the goods to North Carolina. The "Continuing Guarantee and Indemnity Agreement" appears on its face to have been executed in close temporal proximity to consummation of the first transaction and that it was faxed by defendant in Florida to plaintiff in North Carolina. See Plaintiff's Ex. B. While such "Continuing Guarantee and Indemnity Agreement" was executed several months before the transaction underlying this action, it would appear that such document applied to all "shipment[s] or other delivery" of goods between these parties. Id.

In reply to plaintiff's response, defendant argues in part that the "claims asserted by

Mercam are not whether the goods were stolen, but rather whether the indemnity, guarantee apply and whether misrepresentations were made. The alleged misrepresentations took place in Miami, Florida, not the Western District of North Carolina." Reply, at 2. Defendant goes on to argue that plaintiff cannot meet the three prong test of Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985). The Court in Burger King held, however, that physical presence of corporation in a forum state is not required:

> Thus where the defendant "deliberately" has engaged in significant activities within a State, **or has created "continuing obligations" between himself and residents of the forum**, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985)(citations omitted; emphasis added).

In this case the defendant created just such a continuing obligation to a corporate resident of the State of North Carolina when it executed and delivered to plaintiff by means of facsimile the "Continuing Guarantee and Indemnity Agreement." The alleged breach of that agreement does not appear from the allegations of the Complaint to be ancillary to plaintiff's claims, but appears to be the central contention of the Complaint, i.e., had defendant honored that agreement when it learned that it had sold stolen goods to plaintiff, it would have been unlikely that this lawsuit would have been filed.

Having considered the factors in Western Steer-Mom & Pops v. FMT Invs., Inc., and considered the "continuing obligation" rationale of Burger King, the undersigned finds that defendant has had continuing and systematic contacts with plaintiff in this forum, has sent faxes to plaintiff offering goods for sale to plaintiff in North Carolina on a regular and almost weekly basis, has shipped substantial quantities of consumer goods to plaintiff in North

Carolina, and has received payment via wire payment from plaintiff's bank in North Carolina. Further, on November 4, 2004, defendant created a continuing obligation between it and plaintiff, a resident of North Carolina, which appears to be central to the claims asserted by plaintiff. For those reasons, the undersigned finds that it is fundamentally fair to require defendant to defend this action in North Carolina, and will recommend that defendant's Rule 12(b)(2) motion be denied.

### C. Rule 12(b)(3): Venue

Defendant has argued that because this matter is before this court based on diversity, the only appropriate venue is the district within which the alleged misrepresentations occurred, the Southern District of Florida. Defendant argues that "the substantial part of the events or omissions giving rise to the claims arose in Florida by Plaintiff's own admission." Reply, at 1. Defendant argues that plaintiff's president has admitted that he came to Florida to inspect the goods and that he shipped the goods from Florida to North Carolina. Id. Defendant goes on to argue that "Mercam's causes of action all stem from the acts occurring in Miami, Florida, not in North Carolina." Id. The undersigned disagrees.

In <u>Motorola, Inc. v. United States</u>, 350 F.Supp.2d 1057 (C.I.T. 2004), the Court of International Trade held that "[t]he term "substantial" is defined as "[b]eing of considerable importance, value, degree, amount, or extent." *Webster's II New Riverside University Dictionary* 1155 (1988)." Id., at 1074. When each of plaintiff's factual allegations are reviewed in the context of the seven claims asserted against the defendant, it appears that a substantial part of the events occurred in this district. Those events include, among others,

(1) the discovery in North Carolina that the goods sold to plaintiff in Miami were stolen;

(2) the investigation and seizure of those goods in North Carolina by agents of the

-9-

>   FBI;
>
> (3)  the transmittal by defendant to plaintiff in North Carolina of the "Continuing Guarantee and Indemnity Agreement" applicable to this transaction; and
>
> (4)  the alleged refusal of defendant to honor such "Continuing Guarantee and Indemnity Agreement", which was communicated to plaintiff in North Carolina.

While it would appear from the arguments that defendant is not contesting that the goods were stolen, such a concession would not take the stolen goods out of play for purposes of trial. The statute provides that venue is proper where "a substantial part of the events or omissions giving rise to the claim occurred, *or a substantial part of property that is the subject of the action is situated* . . . ." 28 U.S.C. § 1391(a)(2). Apparently, the stolen goods are now located in a building adjacent to this courthouse.

Further, the term "substantial part" is not synonymous with "greater part," making it possible that there may be two or more "substantial parts." Defendant has argued that "the substantial part" of the events took place in Florida, and by use of the determiner "the" tends to infer that there can only be one "substantial part." Case law recognizes that there may be more than one substantial part in the context of venue:

> Simply put, even if a substantial part of the events in this case took place in Maryland, that does not preclude plaintiff from filing suit in the District of Columbia if a substantial part of the events took place here, as well.

Modaressi v. Vedadi, 441 F.Supp.2d 51, 57 (D.D.C. 2006)(addressing Section 1391(b)(2)). Clearly, a "substantial part" of the events or omissions giving rise to this lawsuit occurred in Florida as argued by defendant; however, it is also reasonable to conclude that a substantial part of the events giving rise to the claims in this lawsuit occurred in this district, including the plaintiff's discovery that the goods were likely stolen, the federal investigation

in this district that lead to confirmation that the goods were stolen, the seizure of such stolen goods in this district, the "continuing obligation" made by defendant and transmitted to this district that defendant would stand behind and indemnify plaintiff, the plaintiff's demand communicated from this district that it do so, and the receipt in this district of defendant's refusal to do so.

Thus, venue would be proper in either district, requiring the undersigned to recommend that defendant's Motion to Dismiss for improper venue be denied. Finally, the undersigned can find no reason to transfer this matter to the Southern District of Florida.

**RECOMMENDATION**

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's Motion to Dismiss or in the Alternative to Transfer (#12) be **DENIED**.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: October 18, 2006

Dennis L. Howell
United States Magistrate Judge